**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0399-20

IN THE MATTER OF THE
ESTATE OF NICHOLAS
BALASSONE, DECEASED.

_____

Submitted May 17, 2021 – Decided June 4, 2021

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. 298230.

Byrnes, O'Hern & Heugle, LLC attorneys for appellants (Sean F. Byrnes and Tyler A. Diekhaus, on the briefs).

Robert J. Pompliano, respondent pro se.

PER CURIAM

Plaintiffs Arthur Balassone and David Smith appeal from an August 28, 2020 order denying their request for counsel fees. Arthur Balassone is a direct beneficiary, and David Smith is the husband of a direct beneficiary under the

will governing the Estate of Nicholas Balassone (Estate).[1] Plaintiffs sued the executor of the Estate, Robert Pompliano[2] (Pompliano or Executor), because they were dissatisfied with his handling of the Estate. Eventually, plaintiffs obtained a court order removing Pompliano as the Estate's Executor. After the Executor's removal, plaintiffs petitioned the probate court for attorneys' fees associated with their motions for an Estate accounting and removal of the Executor. The probate judge denied the fee request, finding no authority to award fees absent a will contest or professional negligence action. We affirm.

Nicholas Balassone (decedent) died at the age of 106 on November 25, 2008. A few months before his death, Pompliano assisted in the preparation and execution of a codicil to decedent's will signed in 1985. The codicil appointed Pompliano as Executor of decedent's Estate and included Pompliano as a named beneficiary of the Estate.

In accordance with the codicil, the Executor was "to liquidate [decedent's] entire [E]state as soon after [his] demise as possible." As of his date of death,

---

[1] There are additional beneficiaries of the Estate, but those beneficiaries are not party to this appeal.

[2] Pompliano is decedent's grandnephew and an attorney licensed to practice law in the State of New Jersey.

A-0399-20

decedent owned stock, real property, and bank accounts. The Estate's primary asset was a house located in Weehawken.

In April 2011, the Executor signed a contract to sell the house to a purchaser for $540,000. However, the contract purchaser breached the agreement, resulting in litigation. The litigation ultimately resolved, and the Estate received a $30,000 settlement as a result. However, the litigation delayed resolution of the Estate and distribution of the Estate's assets.[3]

In 2011, Arthur Balassone hired an attorney "to determine the status of the Estate." On April 1, 2011, Arthur Balassone filed a complaint seeking to "compel an inventory, settlement[,] and distribution of the [E]state." In the complaint, Arthur Balassone claimed the Executor unduly delayed administration of the Estate. Two days later, a judge entered an order compelling the Executor to produce a formal accounting of the Estate. The Executor represented he would provide an accounting by January 23, 2012, but he failed to do so.

---

[3] On June 7, 2013, the Executor sold the house to another purchaser for $525,000. With the $30,000 settlement from the litigation with the prior contract purchaser, the Estate received a total of $555,000 from the sale of the house.

A-0399-20

Another beneficiary, Joyce Lanzillo, separately sued the Executor regarding his handling of the Estate. On December 18, 2012, a different judge ordered the Executor to submit a formal Estate accounting. Again, the Executor failed to do so.

In July 2015, plaintiffs filed suit seeking "to remove the [E]xecutor and compel an inventory, settlement[,] and distribution of the [E]state." In a September 17, 2015 order, another judge compelled the Executor to effectuate final distribution of the Estate's assets within thirty days. On November 2, 2015, the Executor provided an Estate accounting but did not distribute the Estate's assets under the September 17, 2015 order.

In January 2016, the probate judge conducted a testimonial hearing concerning finalization of the Estate. As a result of that hearing, in a January 19, 2016 order, the judge directed the Executor to settle the Estate within thirty days, issue a release, and "refund[] bonds and checks" to all beneficiaries. The Executor failed to comply with this order.

In a June 17, 2016 order, the probate judge compelled the Executor to provide a final Estate accounting by July 15, 2016. Again, the Executor did not comply with the judge's order.

A-0399-20

In a January 20, 2017 order, the judge removed Pompliano as the Estate's Executor and appointed Antoinette Basile as the contingent Executrix in accordance with decedent's will. In the order, the judge noted, "In removing [the Executor], the [c]court ma[de] no finding as to cause [for the removal of the Executor] at this time . . . ."

On May 1, 2017, Pompliano sent a check in the amount of $102,736.44 to the Executrix. However, he did not simultaneously forward the Estate's records. In June 2017, Pompliano delivered some of the Estate files to the Executrix.

On May 19, 2017, plaintiffs filed a motion to enforce litigant's rights against Pompliano. In an August 22, 2017 order, the judge compelled Pompliano to "make the entire Estate file, with detailed index, available for direct pickup by the Executrix . . . within seven days . . . ." The order also awarded plaintiffs $3,301.80 in attorneys' fees.

In May 2020, plaintiffs moved for attorneys' fees against Pompliano, citing his delay in administering the Estate as necessitating their filing of various motions related to the Estate. Plaintiffs sought to recoup approximately $49,000 in attorneys' fees based on the Executor's lack of action and missteps resulting in financial harm to the Estate. Pompliano opposed the motion because plaintiffs' action was neither a will contest nor a legal malpractice lawsuit that

could entitle plaintiffs to a fee award. Pompliano also explained plaintiffs suffered no damages because any costs associated with delays in the administration of the Estate were offset by the increased value of decedent's stocks, the payment of dividends from those stocks, and the $30,000 litigation settlement related to the sale of decedent's home.

On August 28, 2020, the probate judge denied plaintiffs' motion for attorneys' fees. In a written statement of reasons, the judge concluded plaintiffs failed to demonstrate entitlement to attorneys' fees because there was no will contest or malpractice claim, just "dissatisfaction . . . with the speed with which [the Executor] proceeded in his administration of the [E]state . . . ." The judge held plaintiffs' "litigation . . . would not fall within any of the recognized exceptions to shift the responsibilities of paying attorney fees."

On appeal, plaintiffs argue the probate judge abused his discretion in denying plaintiffs' application for attorneys' fees following their success in removing Pompliano as Executor of decedent's Estate. We disagree.

When authorized, "fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co., Inc., v. Collier, 167 N.J. 427, 444-45 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). The award of

counsel fees is done at the discretion of the trial court and is accorded substantial deference. See In re Probate of Alleged Will of Hughes, 244 N.J. Super. 322, 328 (App. Div. 1990).

"New Jersey follows the American Rule, which requires that parties bear their own counsel fees except in the few situations specifically permitted by statute or by our Supreme Court." In re Farnkopf, 363 N.J. Super. 382, 395 (App. Div. 2003) (citing In re Niles, 176 N.J. 282, 293 (2003)). Litigants bear their own attorneys' fees unless otherwise provided by court rule, statute, or contract. Niles, 176 N.J. at 303-04 (LaVecchia, J., dissenting).

Under our court rules, probate actions allow for an award of counsel fees "if probate is refused" or "[i]f probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil . . . . " R. 4:42-9(a)(3). However, Rule 4:42-9(a)(3) is inapplicable here because the matter did not involve the refusal of an action for probate or a challenge to the "validity of the will or codicil." Plaintiffs never challenged the probating of decedent's will or codicil. To the contrary, plaintiffs filed actions to ensure decedent's will and codicil were probated and the Estate finalized so they would receive their share of the inheritance.

A-0399-20

Unable to cite any court rule or statute in support of their claim for attorneys' fees, plaintiffs argue "the [c]ourt failed to give full consideration to the import and reasoning of the Court in Packard-Bamberger" in denying attorneys' fees. Plaintiffs assert the Executor's mediocre job in administering the Estate, and his eventual removal as the Estate's Executor, justified an award of attorneys' fees under Packard-Bamberger. However, plaintiffs' reliance on Packard-Bamberger is misplaced.

The Packard-Bamberger case is inapposite and readily distinguishable from the facts here. That case involved the sale of a corporation after the death of its founder. 167 N.J. at 433. The plaintiffs sued a former corporate director, who also served as legal counsel to the corporation, alleging he breached his fiduciary duty as counsel to the corporation by, among other things, failing to disclose a third-party's offer to purchase the corporation. Id. at 434. In Packard-Bamberger, unlike this case, there was a clear attorney-client relationship among the plaintiff corporation, the plaintiff shareholders, and the defendant attorney. It was the attorney-client relationship and the defendant attorney's misconduct and breach of that relationship, as asserted in the plaintiffs' legal malpractice claim, that entitled the plaintiffs to an award of attorneys' fees in Packard-Bamberger. Id. at 443.

A-0399-20

Here, Pompliano never had an attorney-client relationship with plaintiffs. He became the Estate's Executor when decedent named him as such in the codicil to decedent's will.  Thus, plaintiffs' reliance on <u>Packard-Bamberger</u> in support of an award of attorneys' fees is unavailing.

Even assuming there had been an attorney-client relationship between plaintiffs and the Executor, plaintiffs would still be unable to recover attorneys' fees.  Plaintiffs concede they never asserted a legal malpractice claim against the Executor.  Nor did plaintiffs demonstrate any intentional misconduct on the part of the Executor.  The Executor did not steal funds, deal in bad faith, or breach any fiduciary duty.  Thus, the fee shifting provisions available in a legal malpractice action are non-existent here.

Because <u>Rule</u> 4:42-9(a)(3) was inapplicable and plaintiffs never asserted a legal malpractice claim against the Executor, the judge did not abuse his discretion in denying plaintiffs' motion for attorneys' fees.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION